IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:20-CR-00032-DWM |
| | ) | |
| MATTHEW MARSHALL, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Defendant Matthew Marshall ("Marshall"), by and through his undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Additionally, in concurrence with the factors set out in the PSR, Marshall respectfully moves this Court for a downward variance. Marshall submits that a sentence including a downward variance to 24 months for each count of conviction, with sentences running concurrently, is sufficient, but not greater than necessary, to effect the purposes of sentencing under 18 U.S.C. § 3553.

The 51-year-old husband and father of three children who stands before this Court for sentencing is a veteran of the United States Marine Corps and a man who has dedicated his adult life to public service and service to his community. Indeed, what stands out about this case that is purely financial in nature is that, throughout his life, Marshall has chosen public service over profit. He has literally put his life and limb on the line in serving his community and his country. And as reflected in the letters of support submitted by those who know him best, Marshall serves his community and country with selfless acts.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Marshall as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant"). A man of his age and history of public service is unlikely to recidivate and consideration of those factors support the sentence requested by Marshall.

I. **Procedural Background**

On July 22, 2020, a federal grand jury in the District of Montana returned an indictment charging Marshall with wire fraud in violation of Title 18, United States Code, Section 1343 (Count 1), money laundering in violation of Title 18, United States Code, Section 1957 (Counts 2-7), and tax evasion in violation of Title 26, United States Code, Section 7201 (Counts 8-10). (Doc. 1).

On July 28, 2021, a federal grand jury in the District of Montana returned a superseding indictment charging Marshall with the same counts as the original indictment and adding one additional count alleging a violation of aggravated identity theft (Count 11). (Doc 122).

On September 17, 2021, following pretrial motions, a federal grand jury in the District of Montana returned a second superseding indictment charging Marshall with the same counts as the first superseding indictment, but expanding the timeframe of the alleged wire fraud in Count 1 by more than two years. (Doc. 142).

Marshall entered a plea of guilty to Counts 1, 7, and 8 of the second superseding indictment on November 10, 2021. (Doc. 180).

Sentencing is currently scheduled to occur on March 3, 2022. (Doc. 182).

## II.     Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of sentencing as set forth in the statute. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Thornton*, 444 F.3d 1163, 1165 (9th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

In discussing post-*Booker* sentencing, one court noted that courts have now "had [their] full judicial power restored to [them] and now can and must consider the other statutory factors delineated by § 3553(a). . . . Therefore, this Court is no longer required to disregard any relevant mitigating circumstances that fall within the broad parameters of § 3553(a), including a consideration of fundamental fairness." *Benson v. United States*, 2006 WL 618290, at *2 (E.D. Cal. Mar. 9, 2006).

## III.    Advisory Sentencing Guidelines

While Marshall concurs with the basic conclusions of the PSR regarding Guidelines calculations and grouping, Marshall objects to the applied enhancements and the Government's proposed additional enhancement.[1] Specifically, Marshall agrees that the base offense level for Count Group 1 is 7 and the specific offense level based on loss amount increases the offense level by 16 levels. (PSR at ¶¶ 74-75). Marshall agrees that the offense level for Count Group 2 is a base level of 20 and an addition of 2 levels for a specific offense characteristic. (*Id.* at ¶¶ 82-83). When

---

[1] Marshall also reasserts his factual objections to the initial PSR. Those objections are labeled as Defendant's Objections 1-15 in the PSR Addendum.

3

properly computed, the total offense level, after adjusting the grouping unit calculations for the new Group 1 offense level, should be 22. The advisory sentencing guidelines range for an offense level of 22 and a criminal history category I is 41 to 51 months.

Marshall also concurs with the Probation Office that factors exist for a downward variance in this case (*Id*. at ¶ 150).

> A. <u>Objection to Enhancement in Paragraph 76 of the PSR</u>

Marshall objects to the application of USSG § 2B1.1(b)(9). This two-level enhancement applies to a misrepresentation that the Defendant was attempting to obtain a benefit for, in this case, a government agency. However, the justification for the enhancement in the PSR is that Marshall "represented himself as a former member of an elite U.S. Marine Corps Force Reconnaissance unit and a covert CIA agent." The fatal flaw with applying this enhancement under these circumstances is that the alleged representations were about past experiences, not about benefitting a government agency in the present.

This matters because, as a matter of law, even a misrepresentation about a past experience cannot form the basis for the application of § 2B1.1(b)(9)(A). More specifically, the Ninth Circuit has found that "'references' made to victims about 'various government programs or agencies'" do not rise to the level of "acting to obtain a benefit on behalf of . . . a government agency." *United States v. George*, 713 Fed. Appx. 704, 704-05 (9th Cir. 2018) (emphasis in original). While "alluding to a relationship with government agencies and offices can be sufficient," *United States v. DiRoberto*, 686 Fed. Appx. 458, 464 (9th Cir. 2017), the allegations contained in the PSR supporting the application of this enhancement reference past relationships, accurate or otherwise, but not ongoing representation of a government office. *See also United States v. White*, 850 F.3d 667, 675 (4th Cir. 2017) (applying the enhancement based on phone calls representing a current

relationship between the defendant and a government taxing authority); *United States v. Nieves*, 727 Fed. Appx. 721, 724 (2d Cir. 2018) (applying the enhancement based on claims that the defendant was presently a high-ranking immigration official who could influence immigration decisions).

Additionally, Application Note 8(E) states that if the same conduct used to justify an enhancement under § 2B1.1(b)(9)(A) is also used to apply § 3B1.3, then §3B1.3 is not applicable. While Marshall contends that neither is appropriate, under the facts this constitutes an additional objection to Government's suggestion that §3B1.3 is appropriate.

B.  Objection to Enhancement in Paragraph 77 of the PSR

Marshall objects to the application of USSG § 2B1.1(b)(10). Marshall did not use any sophisticated means to execute a scheme. The PSR cites two areas of sophistication, but neither rise to the level required for application of § 2B1.1(b)(10). Indeed, alleged misrepresentations about Marshall's past are not sophisticated. They are simply the straightforward mechanisms that the Government alleges make the basic building block of this scheme. Second, alleged coordination with others to affect the victim, long after the scheme has concluded, is not sophisticated means to either affect the scheme or evade detection.

In stark contrast, all of the financial accounts used to hold and move money were in the name of Marshall. *See United States v. Jennings*, 711 F.3d 1144 (9th Cir. 2013) (holding that use of a misleading name on a bank account supported sophisticated means). The scheme did not involve false invoices, checks, or complicated paper trails to hide Marshall's involvement. *See United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013).

Instead, Marshall pled guilty to a straightforward scheme as set out in the offer of proof presented by the Government at the plea hearing: misrepresentations were made to induce a

particular individual to wire-transfer money and these particular funds did not make their way onto Marshall's federal income tax return. This is the fraud for which Marshall has fully accepted responsibility and is being sentenced—but it does not rise to the level of enhancing the sentence due to sophisticated means.

As such, the application of the sophisticated means enhancement is not warranted under the facts of this case.

C. <u>Opposition to Government Objection #1 Seeking Enhancement Under 3B1.3</u>

Marshall objects to the application of 3B1.3.

The Ninth Circuit set out the analysis in no uncertain terms: "Applying the enhancement requires a two-part inquiry: First, did the defendant hold a 'position of public or private trust' within the meaning of the Guidelines? Second, if so, did the position 'significantly facilitate' the commission of the crime?" *United States v. Contreras*, 581 F.3d 1163, 1165 (9th Cir. 2009); *see also United States v. Adebimpe*, 819 F3d 1212, 1217 (9th Cir. 2016).

First, the Government alleges this scheme was ongoing before Marshall was the CEO of Amyntor. In fact, two "missions" are detailed even before the formation of Amyntor. Marshall cannot be abusing his position as CEO of Amyntor before it exists.

Second, the Guidelines state that the abuse of such trust must have "significantly facilitated" the offense. Again, even acts occurring after Marshall became CEO of Amyntor do not meet this criteria as the reliance on Marshall's representations began long before he became CEO, and did not change based on that new position. In fact, the crimes for which Marshall stands before this Court for sentencing are not directly related to his position at Amyntor.

Additionally, the Government also speaks of "special skills" relevant for the enhancement but—accurately—acknowledges that Marshall did not have the "special skills" needed to trigger

an application of the enhancement. The enhancement is not designed for someone inaccurately claiming he has specials skills; it is specifically designed for someone using actual special skills to commit a crime. See App. Note 4 ("'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing"). It does not set forth an enhancement for merely representing the possession of special skills.

Because the enhancements contained in paragraphs 76 and 77 do not apply, Marshall respectfully objects to the computation of the adjusted offense level in paragraph 81, the total offense level in paragraph 95, and the Guidelines computation based upon a total offense level of 25 in paragraph 130. The adjusted offense level in paragraph 81 should be reduced by 4 levels to 23. The total offense level, after adjusting the grouping unit calculations for the new Group 1 offense level, should be 22. The advisory sentencing guidelines range for an offense level of 22 and a criminal history category I is 41 to 51 months.

**IV.  A Downward Variance is Warranted**

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Based upon a consideration of the statutory sentencing factors set out in 18 U.S.C. § 3553(a), a downward variance is warranted in this case.

Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists numerous factors that a sentencing court must consider. Especially relevant to this case, as set forth in Paragraph 150 of the Presentence Report, and supportive of this motion for a downward variance, are the following factors:

      A.      <u>The History and Characteristics of the Defendant Support a Downward Variance for Marshall – 18 U.S.C. § 3553(a)(1)</u>

Marshall stands before this Court for sentencing because he committed serious crimes. But those crimes do not accurately capture the man Marshall is. At 51 years old with a history of public service including jobs where he put himself in harm's way, Marshall is a loving husband to Heather Marshall, a dedicated co-parent with Keegan Bonnet, and a doting and devoted father to three wonderful daughters who range in age from 2 to 18 years of age.

Marshall has worked hard to provide a safe and stable environment for his family—and to love and support those who rely on him. As his wife, Heather, shares with this Court: "The love he has for me, for his daughters, for his friends is something that is difficult to describe on paper. . . . He has spent his life looking out for the people he loves whether it be through being an amazing daddy, a loving husband, supportive friend, understanding boss, or community service. Whatever it might be in his life, he has spent it trying to make those people's lives better."

Notably, Marshall's love and support of his family does not stop with his wife and daughters. Marshall and Heather took in his then-12-year-old nephew, Christopher, cared for him, and helped him set his life on a new and better trajectory.

What Marshall has provided his immediate and extended family speaks volumes—especially when considered within the context of Marshall's childhood. Sadly, Marshall was not fortunate enough to be born into the safe and stable household that he strives to provide for his wife, for Keegan Bonnet, and for his three daughters. Marshall was raised by his mother, Joann Marshall, and has never known his father. Because Marshall's mother worked hard to provide for her children, Marshall's older sister was primarily responsible for Marshall's care in childhood when they were both young children. Against this backdrop, Marshall's sister was physically abusive to him until well into his teen years—as reflected in detail in the PSR.

Marshall also had a brother 8 years his senior with whom he shared a bedroom as he was growing up. At only 10 years old, Marshall faced loss and tragedy firsthand: when his brother was 18, he was killed in an alcohol-related car crash on the night of his high school graduation.

This was Marshall's childhood—enough to set any child back. But as a testament to his character, Marshall kept his chin up and, as a young adult, chose positions of public service in law enforcement and the military instead of chasing money.

Marshall's dedication to his family has not changed, even in these recently trying times. Keegan Bonnet notes, in her letter of support, that Marshall "has been our rock through the hardest of times" over the last few years, and is always "joyous and engaging for our little girls, M[] and S[]." Keegan's mother, Jennifer Copeland, also highlighted Marshall's dedication to his daughters even in the last few tumultuous years, saying "[n]o matter how difficult things have been the last few years he has always been present for all of us."

In addition to his dedication to his family, Marshall has, throughout his life, shown his dedication to serving his community and the nation. Marshall was a local police officer in Indiana, a State Trooper in Indiana, a Marine Corps reservist, and a contractor employed by various entities serving our country both domestically and abroad. While Marshall was not perfect along the way, there is no denying that he put himself in harm's way to protect his community and our country—and that speaks to who Marshall is as a person.

> B. The Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Further Crimes Support a Downward Variance – 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), and (a)(2)(C)

The conduct that led to his guilty plea is incongruent with the life of public service that Marshall has attempted to live. Marshall falls into Criminal History Category I and, as reflected by his perfect performance on bond for the last several years, this Court can be confident Marshall

will not commit any further crimes and will comply with any conditions set by this Court. As such, instead of imposing a longer prison sentence in this case, this Court can and should instead rest assured that the same objectives can be accomplished with conditions of supervised release.

Since pleading guilty—and indeed well before then—Marshall has turned his life around. He has worked hard to provide for his family and he has stayed entirely out of trouble. This is not a defendant who will recidivate.

Furthermore, sentencing courts often consider a defendant's age when considering this Section 3553(a) factor. Indeed, the Sentencing Commission notes that "numerous recidivism studies document well that older offenders are at lower risk for reoffending, and the Commission's own research has confirmed this finding for federal offender populations." United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017). Of particular note, for defendants like Marshall who fall into Criminal History Category I and who are over the age of 50, the recidivism rate is 16.1%, compared to over 50% for offenders under the age of 30. *Id.*; *see also United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. 2005) (observing that those defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants"). The Sentencing Commission releases such empirical studies precisely so that, in cases such as this, the Court can include these facts in its consideration of a fair sentence. At age 51, Marshall will not recidivate even if he receives the most lenient sentence possible.

As he stands before this Court, Marshall has fully accepted responsibility for his conduct, is profoundly remorseful, and has worked tirelessly to do everything within his ability to make this right. That speaks volumes. But as this Court crafts the appropriate sentence in this case, this Court should take into account the fact that Marshall has already suffered greatly as a result of his actions,

and the shame and humiliation this criminal case has brought him has been difficult for him to bear. He is a good person, and he will never find himself in the defendant's chair again.

Furthermore, Section 3553(a)(7) directs this Court to consider "the need to provide restitution to any victims of the offense." In his plea agreement, Marshall agreed to pay restitution to the extent ordered by this Court and Marshall has not objected to the proposed restitution computation set out in the PSR. Indeed, it is only by being permitted to work on the outside as opposed to being in custody that Marshall will be able to pay restitution.

C.  The Need to Avoid Unwarranted Sentencing Disparities – 18 U.S.C. § 3553(a)(6)

In this post-*Booker* era, the law requires that this Court's sentence not result in unwarranted sentencing disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). As the Probation Office noted in the PSR, 98% of similarly-situated offenders received a downward variance averaging 6 months.

In 2019, for example, based on data published by the United States Sentencing Commission, 3 out of every 4 defendants received a below-Guidelines sentence.[2] For economic offenses nationwide, the majority of defendants received a below-Guidelines sentence.[3]

Further, in light of *Booker* and its progeny, district courts are now free to account for the fact that the Guidelines analysis often results in an advisory sentencing range which bears little relation to a defendant's actual conduct, especially where, as here, the Guidelines are determined mechanically by loss amounts. *See, e.g., United States v. Parris*, 573 F. Supp. 2d 744 (E.D.N.Y. 2008) (FB) (imposing 60 months' imprisonment in stock fraud case despite advisory sentencing range of 360 months to life).

---

[2] *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/Table29.pdf  (last accessed February 24, 2022).
[3] *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/TableE7.pdf  (last accessed February 24, 2022).

Marshall submits that the following examples militate towards the Court's imposition of a sentence well below the Guidelines to avoid unwarranted sentencing disparities.

In *United States v. Davenport,* case no. 1:17-CR-00061 (SDNY, Preska, *J.*), Davenport was indicted for, *inter alia,* wire fraud and money laundering; Davenport proceeded to trial and was convicted. Davenport was at a level 30 and his guideline range was 97 to 121 months.[4] Davenport requested a non-custodial sentence, the Probation Office's recommendation was 30 months, and the Government sought a below-guidelines sentence, but one that was substantially above the recommendation of the term recommended by Probation.[5] Judge Preska found that notwithstanding the $9.7 million loss and the fact that Davenport used shell companies, a sentence of one year and one day was appropriate under the circumstances.

Marshall submits that if Davenport received a "year and a day" sentence even after trial when at a level 30 based on a $9.7 million loss, the facts of this case are substantially less egregious and would warrant the 24-month sentence Marshall seeks.

While the comparison between Marshall and Davenport is not exact, this Court can, and should, draw some comparisons between the two cases. As Davenport was sentenced to a below-guidelines term of imprisonment, Marshall's sentence should likewise be substantially below the Guidelines.

D.   Collateral Consequences

In the context of federal sentencing, it is often far too easy to lose sight of the significant and life-altering collateral consequences defendants face as a result of a federal felony criminal conviction.

---

[4] This range was driven by the $9.7 million kickback that Davenport received.

[5] Part of the reason that the Government advocated for a substantial sentence was the multimillion-dollar kickback and the use of shell companies (because the amount of the bribe/kickback exceeded $9.5 million but did not exceed 25 million, 20 levels were added, pursuant to U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(K)).

In that vein, Marshall brings one important case to the Court's attention: *United States v. Nesbeth*, 188 F. Supp. 3d 179, 2016 WL 3022073 (E.D.N.Y. 2016), *appeal withdrawn* (Sept. 9, 2016).

In *Nesbeth*, the defendant was convicted by a jury of "of importation of cocaine and possession of cocaine with intent to distribute. Her advisory guidelines sentencing range was 33-41 months." *Id*. at *1. In thoughtfully rendering a sentence of one year of probation, Judge Block explained:

> Nonetheless, I rendered a non-incarceratory sentence today in part because of a number of statutory and regulatory collateral consequences she will face as a convicted felon. I have incorporated those consequences in the balancing of the 18 U.S.C. § 3553(a) factors in imposing a one-year probationary sentence.
> I am writing this opinion because from my research and experience over two decades as a district judge, sufficient attention has not been paid at sentencing by me and lawyers—both prosecutors and defense counsel—as well as by the Probation Department in rendering its pre-sentence reports, to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence.
> There is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences. Many—under both federal and state law—attach automatically upon a defendant's conviction.
> The effects of these collateral consequences can be devastating. As Professor Michelle Alexander has explained, "[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us.'"

*Id*. (internal footnotes omitted).

If Judge Block, after over two decades as a district judge, considered varying downward from a Guidelines range of 33-41 months (a level 20), and imposed a non-custodial sentence, this Court should, at a minimum, consider imposing a below-Guidelines sentence in this case as well. Indeed, the collateral consequences of Marshall being a convicted felon will have immediate and long-lasting effects—including, but not limited to, not being able to vote despite being a person

13

who has literally put his life and limb on the line for his country, not being able to possess a firearm, and not being able to secure certain loans, among others. This Court can, and should, take these long-lasting collateral consequences into account when fashioning a sentence sufficient, but no greater than necessary.

E. Sentencing During the COVID-19 Pandemic

Now more than two years into a pandemic that has changed day-to-day life throughout the globe, it is important for this Court to consider the impact of incarceration today as compared to the impact of incarceration outside of a pandemic. The reality is, each day in custody is that much harder than it used to be because in-person visits are impossible at certain times including at most federal prisons today, group programming is more limited, and COVID-19 precautions require quarantine of inmates in solitary confinement despite no wrongdoing.

As the Honorable Paul Engelmayer in the United States District Court for the Southern District of New York recently observed:

> the conditions in federal prisons have been uncommonly hard during the pandemic. At the MCC and the MDC, the local jails, where in-custody defendants awaiting sentence in this district are typically held, such conditions have been particularly onerous and, on several occasions, have resulted in lengthy lockdowns. To prevent the spread of COVID, there have been restrictions on inmate movement, and on visits from family and counsel. There have also been restrictions to aimed at safeguarding health in various FCIs, federal correction institutions, in which defendants are generally designated after sentencing. I have repeatedly taken those harsh conditions into account in imposing sentence.

See *United States v. Teman*, Tr. from Hearing Dec. 1, 2020 (S.D.N.Y. Case No. 19-CR-696-PAE at pp. 44-45). Judge Engelmayer continued,

> I have repeatedly said in sentences over the last eight months that time spent in custody during the lockdown conditions necessitated by a pandemic is necessarily harder time than Congress or anyone ever envisioned or intended prison time to be. And so in deciding on the just sentence, I have taken the view the defendants who have endured custody in such circumstances are entitled -- all else equal -- to lower overall sentences than would otherwise be the case. In other words, in calculating

14

the sentence, I have informally given defendants credit for more than one day for each day spent in custody.

*Id.* These same considerations apply with full force to Marshall, who will have to report to prison in the middle of a global pandemic with no certain end in sight.

### V.     Conclusion

As the age-old adage goes, "justice must be tempered with mercy." Marshall accepts that he is before this Court for sentencing for serious crimes and that this Court must impose a penalty. That is justice. But Marshall also appeals to this Court's discretion to temper that justice with mercy.

One of the toughest realities to accept at any age is that, as humans, we cannot go back in time to make better decisions. We have to accept the decisions we make and the consequences of those decisions. But if ever there were a defendant standing before this Court who is as remorseful as he is committed to never finding himself in this situation again, it is Marshall. He has pled guilty, accepted responsibility, performed perfectly on bond, agreed to pay restitution, and continued to provide for his family even in these trying times.

For all of these reasons, Marshall respectfully submits that a sentence including a downward variance to 24 months for each count of conviction, with sentences running concurrently, and allowing him to self-surrender based on the direction on the direction of the Bureau of Prisons, is sufficient, but not greater than necessary to effect the purposes of sentencing under 18 U.S.C. § 3553.

Respectfully submitted,

**Margulis Gelfand, LLC**

_/s/ Justin K. Gelfand_
JUSTIN K. GELFAND, #62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted *pro hac vice*

## Certificate of Compliance

Pursuant to Local Rule, this certifies that the body of the attached Memorandum contains 4,673 words, excluding the caption and certificate of compliance.

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted *pro hac vice*

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

                    **Margulis Gelfand, LLC**

                    */s/ Justin K. Gelfand*
                    JUSTIN K. GELFAND, #62265*
                    7700 Bonhomme Ave., Ste. 750
                    St. Louis, MO 63105
                    Telephone: 314.390.0234
                    Facsimile: 314.485.2264
                    justin@margulisgelfand.com
                    *Counsel for Defendant*
                    *Admitted pro hac vice